UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| PLAINTIFF MOFFITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-03093-CRL-KLM |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

**KAREN L. McNAUGHT, United States Magistrate Judge:**

This is an action under 42 U.S.C. § 405(g)[1] for judicial review of the decision of the Administrative Law Judge ("ALJ") denying Plaintiff Moffitt's application for social security disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1383(c)(3). Before the undersigned Magistrate Judge is plaintiff's complaint and substantive brief seeking remand of the ALJ's decision and defendant's answer and substantive brief seeking affirmance of the ALJ's decision. (Doc. 1, 7, 10, 14). For the reasons stated herein, this Court recommends the ALJ's decision be **AFFIRMED**.

**I.    BACKGROUND**

Plaintiff, Plaintiff Moffit, is a 52-year-old woman with anxiety, depression, diabetes, congestive heart failure, back problems, knee pain, and other

---

[1] *See* 42 U.S.C. § 405(g) (requiring the court to enter judgment upon the pleadings and transcript of the administrative record).

conditions. Plaintiff has a high school and community college education and has worked, *inter alia,* as a phlebotomist, home health assistant, ocular tissue surgeon, nurse recruiter, and supervisor. (R. 60-64).[2] Plaintiff was 47 years old on April 10, 2019, when she applied for Disability Insurance Benefits. (R. 242-248). Her application was denied initially on January 16, 2020, and on reconsideration on April 14, 2020. (R. 125-129). She requested a hearing on May 6, 2020, which was held on August 2, 2021, before the Honorable Susan Toth (the ALJ). (R. 130-137). At the hearing, plaintiff was represented by an attorney, and both plaintiff and a vocational expert testified. (R. 40). The ALJ issued a decision confirming the denial of benefits on September 20, 2021. (R. 12-39). The Appeals Council denied plaintiff's request for review on March 31, 2022, and the ALJ's decision became final. (R. 1-6). Plaintiff timely filed this civil action seeking review of the ALJ's decision on June 6, 2022. (Doc. 1).

II. **DISCUSSION**

    A. **Legal Standard**

        1. **Standard of Review**

When reviewing the administrative record, the court does not "reweigh the evidence or substitute [its] judgment for that of the ALJ." *Chavez v. Berryhill,* 895 F.3d 962, 968 (7th Cir. 2018). The court reviews a decision denying benefits to determine only whether the ALJ properly applied the correct legal standards and whether substantial evidence supports the ALJ's conclusions. *Jelinek v.*

---

[2]References to the pages within the Administrative Record will be identified by (R. page number). The Administrative Record appears at Docket Entry 8 (Doc. 8).

*Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial" here means "more than a mere scintilla," for which the threshold of evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In the Seventh Circuit, the Commissioner's reasoning must "build an accurate and logical bridge between the evidence and the result." *Powell v. Kijakazi*, 664 F. Supp. 3d 846, 850 (C.D. Ill. 2023).

### 2. Disability: Five-Step Analysis

In determining a claimant's disability, the ALJ conducts a five-step sequential test. *See* 20 C.F.R. § 404.1520(a)(4). The burden to prove disability is on the claimant in the first four steps, but shifts to the ALJ to disprove disability at the fifth step. *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023).

First, the claimant must prove he is not currently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4). Second, he must prove his medically determinable impairment lasting at least 12 months is "severe." *Id.* If the claimant alleges to have a mental impairment, as opposed to physical, the evaluation proceeds differently at step two. To evaluate the severity of claimant's mental impairment, the ALJ will turn to the "Paragraph B criteria." *See* 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00. This is a list of four areas of mental functioning for the ALJ to evaluate. The ALJ must determine whether the claimant can: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself. *Id.* If the ALJ finds the claimant's mental impairment results in an "extreme" limitation in

one area, or a "marked" limitation of two of the four areas of mental functioning, then the claimant's mental impairment is considered severe.[3] *Id.*

Third, claimant must prove his impairment is medically equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1 ("Listings"), in which case the claimant is automatically presumed disabled. *Id.* Because meeting the presumption requirement in step three merely expedites the decision-making process for a claimant who is considered "legally" disabled, the sequential evaluation does not stop there for those claimants whose impairment is excluded from the Listings. Thus, if the claimant's severe medical impairment does not meet any of the requirements in the Listings, then the ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.*

The RFC is a list of activities representing the most a claimant can work despite his limitations. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). "When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The RFC evaluation happens between steps three and four and applies to steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv-v).

Fourth, the claimant must prove he is incapable of performing his past relevant work. *Id.* Fifth, the ALJ must prove the claimant can perform other work

---

[3] The effects of a claimant's mental impairment on each of the four areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation (though the use of such a scale is not required). 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00.

existing in substantial numbers in the national economy. *Id.* Here, the ALJ must consider the claimant's RFC, age, education, and past work experience. *Id.* The ALJ can, and often does, use a vocational expert to prove this. *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009).

### B. Analysis

At issue here are step two, the RFC step, and step five of plaintiff's mental impairment evaluation. She argues, among other things, that the ALJ erred in finding plaintiff had a moderate limitation in her ability to sustain concentration, persistence or pace, while failing to include that limitation in the RFC or vocational hypothetical. This Court agrees, in part, but finds the error harmless.

In her decision, the ALJ found plaintiff's mental impairments were not disabling. (R. 16). At step two, the ALJ concluded the mental impairments were not severe. (R. 22). Relevant here are the ALJ's findings of a moderate limitation in plaintiff's ability to interact with others and concentrate. (R. 22). The ALJ concluded plaintiff's ability to interact with others was moderately limited because she had reported increased stress with wedding planning and caring for an elderly family member, which resulted in panic attacks. (R. 22). The ALJ then noted panic attacks would be expected to interfere with plaintiff's concentration, but, because the record showed "normal attention abilities" and "fair or good" concentration, the ALJ found a moderate limitation in plaintiff's ability to concentrate. (R. 22). Defendant, referencing 20 C.F.R. Subpart P, App. 1, § 12.00(F)(2)(c), argues the ALJ translated plaintiff's "fair" ability to concentrate into a moderate limitation because the C.F.R. defines "moderate limitation" as a

"fair" ability to function "independently, appropriately, effectively, and on a sustained basis." (Doc. 14 at 2).

Plaintiff argues the ALJ failed to account for plaintiff's panic attacks when the ALJ found plaintiff had the mental RFC to "understand and remember simple and intermediate instructions, with intermediate defined as more than simple and less than complex; simple tasks that are not performed in tandem or as an integral part of a team; and occasional interaction with coworkers, supervisors and the general public." (Doc. 10 at 3-11); (R. 23). According to plaintiff, the RFC findings should have specified the amount of time she would have to be away from work due to her panic attacks. (Doc. 10 at 5). Specifically, plaintiff claims the ALJ was required to incorporate into the RFC: (1) how long and how often plaintiff would be unable to perform tasks due to her panic attacks; (2) the extent of plaintiff's inability to concentrate, persist, or maintain pace due to her panic attacks; and, if the ALJ chose to exclude such limitations, (3) an explanation of her reasoning for so doing. (Doc. 10 at 5). This Court finds the ALJ properly accounted for plaintiff's limitations in consideration of her panic attack symptoms.

In support of her argument, plaintiff cites to a May 2020 clinic visit where she reported experiencing several panic attacks per day during the previous two months. (R. 2120). In the same note, she reported feelings of stress caused by an interruption of her bariatric program, wedding plans, and caring for a problematic elderly relative. *Id.* As treatment, the doctor prescribed medication for plaintiff's anxiety and depression. *Id.* In her two-week follow-up, she reported

wearing a mask was causing her anxiety, but she was "otherwise doing well" and her feelings of anxiety, depression and mood "improved." (R. 2128). This is the only evidence of plaintiff's panic attacks in the 2,218-page record.

When forming a list of activities the claimant can do (the RFC), the ALJ must consider the limitations imposed by all of claimant's impairments and their consequent symptoms, even those that are not severe. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). This includes moderate limitations in concentration, persistence, or pace. *Id.* However, an ALJ need only include limitations that are supported by the medical record. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Here, the ALJ properly accounted for plaintiff's panic attack symptoms when she limited plaintiff to: (1) understanding and remembering simple and intermediate instructions; (2) performing simple tasks with normal breaks that are not performed in tandem or as an integral part of a team; (3) with only occasional interaction with others. (R. 23).

This is because, at step two, the ALJ concluded plaintiff's panic attacks were a result of her reported stress with wedding planning and caring for an elderly family member. (R. 22). The ALJ reasoned those symptoms gave rise to a moderate limitation in plaintiff's ability to interact with others, but not her ability to concentrate, persist, or maintain pace. *Id.* Accordingly, the ALJ included social limitations in plaintiff's RFC after providing additional analysis of plaintiff's panic attacks under the RFC step. (R. 30). Her additional analysis was not more detailed than her step two analysis, despite the ALJ stating it should have been. (R. 23, 30). However, it was the only analysis the single May 2020 visit note could

viably support. Contrary to plaintiff's argument, the ALJ did explain how her RFC accounted for the impact plaintiff's panic attacks had on her ability to interact with others. The ALJ tied the RFC to the May 2020 note and tailored plaintiff's workplace setting to accommodate for her panic attacks by limiting her interactions with people. *See Jozefyk v. Berryhill*, 923 F.3d 492, 497–98 (7th Cir. 2019). There is a logical bridge between the ALJ's conclusion and the only evidence in the record— albeit a difficult one to follow, it is at least reasonably discernable. *See Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (finding that a reviewing court must uphold an agency's decision of "less than ideal clarity" if the logical path "may reasonably be discerned").

Nothing in the May 2020 note, or anywhere in the medical record, could substantiate how long and how often plaintiff would have to miss work due to her panic attacks. The only evidence the note provides is that plaintiff suffered multiple panic attacks per day between March 2020 and May 2020 and then her feelings of "anxiety/depression/mood" improved. (R. 2128). The same applies to how panic attacks would affect her ability to concentrate. Such limitations are not supported by the medical record and need not be included, nor does the ALJ owe an explanation for their exclusion. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

Plaintiff alleges the ALJ failed to consider how her panic attacks impacted her ability to sustain work because the ALJ relied on the opinions of doctors DiFonso and Dres—both psychological consultants tasked with formulating

plaintiff's RFC[4]—which were provided before she began to experience panic attacks. (Doc. 10 at 5-7). Such a statement is erroneous. The ALJ clearly articulated her considerations of plaintiff's panic attacks in every step of the mental impairment analysis. (R. 22, 30). At the RFC step, the ALJ concluded the psychological consultants' opinions were consistent with the social limitations she determined to be the sole impact of plaintiff's panic attacks. (R. 30-31). Although "an ALJ must not rely on a physician's assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the physician's views," the May 2020 note of plaintiff's panic attacks is not a significant medical diagnosis that could have changed the psychological consultants' views. *Pavlicek v. Saul*, 994 F.3d 777, 783–84 (7th Cir. 2021).

The real issue in this case is less about plaintiff's panic attacks and more about the ALJ's general failure to account for plaintiff's moderate limitation in concentrating in the RFC. The argument in both parties' briefs concerns the Seventh Circuit's continuous reiteration that, where there is a moderate limitation in a mental functioning area at step two, there must be a restriction in sustaining work directly related to that functional area at the RFC step. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)(finding the RFC assessment must incorporate moderate limitations in concentration, persistence, or pace), *Winsted v. Berryhill*, 923 F.3d 472 (7th Cir. 2019)(finding the vocational hypothetical must incorporate

---

[4]When the claimant alleges a mental impairment, a psychological consultant completes the medical portion of the case review and provides an assessment of the claimant's residual functional capacity about the mental impairment of the claim. 20 C.F.R. §§416.1015, 416.1016.

moderate limitations in concentration, persistence, or pace). Contrary to defendant's argument that such law is outdated, it continues to be well-established both the ALJ's RFC assessment and the vocational hypothetical must incorporate all of the claimant's limitations supported by the medical record. *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019). While it is true an ALJ may reasonably rely upon the opinion of a psychological consultant who translates a moderate limitation in concentration into an RFC determination, she must still consider whether the consultants' narrative RFC assessments adequately encapsulate the checklist portion of the consultants' opinion. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021).

On October 7, 2019, and April 8, 2020, Drs. Difonso and Dres reviewed the record and noted in the checklist portion of their reports that plaintiff had a moderate limitation in concentrating. (R. 94, 117). However, in the narrative RFC portion, they found her attention skills adequate for performing "simple one- to two-step and multiple-step tasks with modified social demands." (R. 95, 118). In her own RFC assessment, the ALJ relied on the psychological consultants' opinions and found plaintiff was "reasonably limited to simple and intermediate instructions," "simple tasks with normal breaks that are not performed in tandem or as an integral part of a t[eam]," and "occasional interpersonal interactions." (R. 30). None of these mental limitations relate to plaintiff's ability to concentrate—not "understanding and remembering simple and intermediate instructions;" "performing simple tasks with normal breaks;" "not perform[ing] in tandem or as an integral part of a team," or "occasional interaction with others." (R.

23). This Court does not find such terms encompass plaintiff's moderate limitation in concentrating. Someone with problems concentrating might not be able to understand instructions or complete a task, no matter how simple the instructions or task may be. *See Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020).

In her RFC analysis, the ALJ provided what this Court assumes are supposed to be reasons for such an omission: "[Plaintiff] specifically denied any problems with memory or concentration;" "[plaintiff] was able to remain focused and persevere during testing;" "[plaintiff's] thought processes were logical, coherent, and relevant;" and "she was able to perform serial sevens and reverse spelling tasks." (R. 30). The Court cannot read into these statements a sufficient articulation for why the ALJ determined plaintiff had a moderate limitation in her ability to concentrate, but does not warrant any concentration limitations in the RFC. Indeed, such an omission leaves the Court wondering why the ALJ found any limitation in plaintiff's concentration, if her concentration abilities do not limit her ability to sustain work. If the ALJ found plaintiff's ability to concentrate at work is "fair," or moderately limited, then the RFC language must reflect that in at least some way. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)(finding that no magic words in the RFC are necessary, any language accounting for claimant's limitations will suffice).

This is especially true given the ALJ included restrictions in plaintiff's ability to interact with others, thereby accounting for the moderate limitation in that functional area, but did not account for plaintiff's moderate limitation in

concentrating. Even *Pavlicek*, the case upon which defendant relies, found a claimant who was moderately limited in maintaining pace was able to perform "simple, repetitive tasks *at a consistent pace* [emphasis added]" where the plaintiff in the case was moderately limited in maintaining pace. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). Such a technicality may seem fruitless in this case, but it is the legal standard. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *see also Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020); *see also Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)(all finding the ALJ's RFC—and derivative vocational hypothetical—must account for all of claimant's limitations). Although ultimately harmless, such an omission is erroneous.

The same principle applies at step five, where the vocational expert must be properly oriented to all of claimant's deficiencies in concentrating. *See Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019). "When an ALJ relies on an expert's opinion to find the plaintiff has limitations in concentration, persistence, or pace, the reviewing court considers whether the ALJ's hypothetical conveys the limitations found by the expert." *Id.* Here, the vocational hypotheticals were an exact reiteration of the ALJ's subsequent mental RFC, which the ALJ formulated based on Drs.' DiFonso and Dres expert opinions. (R. 23, 73-75). Both of those expert opinions noted a moderate limitation in concentrating and ultimately found plaintiff's ability to concentrate was adequate for simple tasks. (R.

94-95). Thus, the vocational hypothetical conveyed the limitations found by the experts.

Whether the vocational expert was properly directed to consider plaintiff's moderate limitation in concentrating is a point on which two reasonable minds could differ. One the one hand, the vocational hypothetical, which was the same as the RFC, does not say anything about plaintiff's moderate limitation in concentrating and could not have properly oriented the vocational expert. On the other hand, the ALJ found plaintiff's concentration was adequate for the tasks enumerated in the vocational hypothetical. Even though this Court finds it to be error not to convey the moderate limitation into the RFC and its subsequent vocational hypothetical, such error is harmless. "If reasonable minds could differ as to whether plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

This Court finds such error to be harmless because we can predict with great confidence that the result on remand would be the same. *Schomas v. Colvin*, 732 F. 3d 702, 708 (7th Cir 2013)("we will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same"). There is no evidence in the administrative record that supports a revised RFC because neither plaintiff nor the ALJ, or Drs. DiFonso and Dres, specify how plaintiff's moderately limited concentration restricts her ability to sustain work. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)(finding there were "no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand" because the claimant did not

testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record did not support any). While Dtrs. DiFonoso and Dres found plaintiff's ability to maintain attention and concentration for extended periods was moderately limited, neither explains why nor provides RFC limitations beyond simple tasks. (R. 94-95). Beyond these experts' opinions, there is no evidence in the record that could substantiate greater limitations in the RFC than those found by the ALJ. Contrary to what plaintiff argues, the evidence of her panic attacks does not suffice to change the result of the ALJ's disability determination. Thus, the error is harmless.

Plaintiff raises two final objections to the ALJ's step five analysis. First, plaintiff argues the ALJ did not meet her burden of proving a substantial number of jobs plaintiff could sustain exist in the national economy. (R. 11-15). The argument suggests the vocational expert never specified the number of jobs that exist based on the second vocational hypothetical, but the conversation in the transcript of the hearing clearly shows the vocational expert testifying the same number of jobs that exist for the first vocational hypothetical also exist for the second one. (R. 71-78). The relevant portion of the conversation between the ALJ and the vocational expert during the August 2, 2021, hearing follows:

> ALJ: For hypothetical number one, please assume a hypothetical individual . . . who . . . can stand or walk in combination for six hours in an eight-hour workday…. Could this individual perform the past work as actually performed or generally performed?
>
> VE: They could not.
>
> ALJ: Would the individual be able to perform other work in the national economy?

> VE: They could. There would be a range of light unskilled jobs that this hypothetical individual could perform. Representative jobs . . . include . . . a shipping and receiving weigher…. There are approximately 29,385 of those jobs in the U.S. Another job is that of a marker…. There are approximately 92,415 of those jobs in the U.S. And a third job is that of a routing clerk…. There are approximately 73,960 of those jobs in the U.S.
>
> ALJ: For hypothetical number two, if the individual described in the first hypothetical could only stand or walk in combination for four hours in an eight-hour workday with normal breaks, with that change, would the jobs you identified in response to hypothetical number one remain available if everything else remains the same?
>
> VE: It would. Although the DOT does define light work as standing and walking up to six hours in an eight-hour day, these are jobs that do allow for alternation of sitting and standing, based upon my nearly 30 years' experience in this field of expertise and seeing these jobs performed. So as a result, these . . . jobs would have remained available to that hypothetical individual.

(R. 73-75.) The ALJ's hypothetical question asked the vocational expert whether jobs exist for an individual who, among other limitations, could only stand or walk in combination for six hours in an eight-hour workday with normal breaks. The vocational expert opined that such jobs exist in substantial numbers, including as a shipping and receiving weigher, marker, or routing clerk. (R. 32). When the second vocational hypothetical changed the "six hours" to "four hours," the answer remained the same. It is not erroneous for the ALJ to rely on the vocational expert's testimony. *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009). The vocational expert clearly identified a significant number of jobs plaintiff can perform and the testimony is uncontradicted. *Id.*

Second, and in continuance of the above argument, plaintiff claims the

ALJ was required to ask the vocational expert more specific questions about the unskilled jobs that allow for alternating between sitting and standing. (R. 13-15). Plaintiff suggests the ALJ was required to ask the vocational expert whether such jobs: (1) allow the individual to alternate between sitting and standing at will, (2) limit the number of times the individual can alternate, and (3) limit the frequency of such alternations. *Id.* In support of her argument, plaintiff cites to SSR 83-12, which states that "in cases of unusual limitation of ability to sit or stand, a vocational expert should be consulted to clarify the implications for the occupational base." Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Exertional Limitations Within A Range of Work or Between Ranges of Work, SSR 83-12 (S.S.A. 1983). The ALJ did just that. She consulted a vocational expert and posed three hypotheticals to the vocational expert, altering in each one the number of hours the hypothetical claimant could sit or stand in an eight-hour workday. The vocational expert provided the number of jobs available in the national economy based on each hypothetical. Specifically, "based upon [the vocational expert's] nearly 30 years' experience in this field of expertise and seeing these jobs performed," she concludes the jobs of receiving weigher, marker, or routing clerk are "are jobs that do allow for alternation of sitting and standing" and they "would have remained available to [plaintiff]." (R. 75). Thus, the vocational expert was properly consulted and properly clarified the implications for the occupational base. That is all the ALJ is required to do. This Court finds substantial evidence supports the ALJ's finding that plaintiff could perform the jobs provided by the vocational expert.

## II. CONCLUSION

For the reasons set forth above, it is recommended that: (1) the ALJ's Decision denying benefits to plaintiff, Donna Moffitt be AFFIRMED and entry of judgment be entered in favor of the Commissioner; and (2) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the plaintiff, Donna Moffitt, is AFFIRMED."

The parties are advised any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

**It is so recommended.**

Entered on September 25, 2024.

/s/ Karen L. McNaught
KAREN L. McNAUGHT
UNITED STATES MAGISTRATE JUDGE